# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MICHAEL D. GREEN, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Case No. CIV-15-261-SPS |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of the Social ) | |
| Security Administration, ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

The claimant Michael D. Green requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for benefits under the Social Security Act. The claimant appeals the decision of the Commissioner and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons discussed below, the Commissioner's decision is REVERSED and REMANDED for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his

age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted]. The term substantial evidence has been interpreted by the United States Supreme Court to require "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The Court may not reweigh the evidence nor substitute its discretion for that of the agency. *Casias v. Secretary of Health & Human Services*, 933

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. *Id*. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if his impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), he is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that he lacks the residual functional capacity (RFC) to return to his past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work existing in significant numbers in the national economy that the claimant can perform, taking into account his age, education, work experience and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

F.2d 799, 800 (10th Cir. 1991). Nevertheless, the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born on October 11, 1965, and was forty-seven years old at the time of the administrative hearing (Tr. 197). He completed high school, and has worked as a janitor, landscape laborer, baler, and construction laborer (Tr. 52, 239). The claimant alleges that he has been unable to work since an amended onset date of October 13, 2011, due to slipped discs and arthritis in his back (Tr. 40, 229).

## Procedural History

The claimant applied for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85, on September 21, 2011. His application was denied. ALJ Deborah Rose held an administrative hearing, and determined that the claimant was not disabled in a written opinion dated November 14, 2013 (Tr. 26-32). The Appeals Council denied review, so the ALJ's written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 416.1481.

## Decision of the Administrative Law Judge

The ALJ made her decision at step five of the sequential evaluation. She found that the claimant had the residual functional capacity ("RFC") to perform less than the full range of sedentary work, *i. e.*, he could lift/carry/push/pull ten pounds, stand/walk for

up to two hours in an eight-hour workday, and sit for six hours in an eight-hour workday, but could only occasionally climb, balance, stoop, kneel, crouch, and crawl, and required the use of a cane to ambulate (Tr. 29). The ALJ concluded that although the claimant could not return to his past relevant work, he was nevertheless not disabled because there was work he could perform in the regional and national economies, *e. g.*, touch up screener, food and beverage order clerk, and bench hand (Tr. 31-32).

## Review

The claimant contends that: (i) the Appeals Council failed to properly consider evidence submitted after the ALJ's written opinion, and (ii) the ALJ failed to properly analyze his credibility. The Court agrees with the claimant's first contention.

The ALJ found the claimant had the severe impairments of degenerative disc disease of the cervical and lumbar spine, and cerebellar atrophy with ataxia, and the non-severe impairment of history of alcohol abuse (Tr. 28). The medical evidence relevant to this appeal reveals that the claimant presented to Dr. Anil Singhal on February 9, 2012, for a neurology consultation (Tr. 377-79). Dr. Singhal noted cerebellar ataxia in all of the claimant's extremities, specifically finger to nose ataxia, heel to shin ataxia, dysmetria, and dysdiadochokinesia, but that his strength in all of his extremities was "pretty good." (Tr. 377). Dr. Singhal also noted the claimant could not stand properly, or perform tandem walking, and that he had a positive Romberg's test (Tr. 377). A MRI of the claimant's brain revealed diffuse cerebellar atrophy (Tr. 331). Dr. Singhal diagnosed the claimant with, *inter alia,* cerebellar ataxia (possible spinocerebellar degeneration), rule

out alcohol causing cerebellar ataxia, and alcohol abuse (Tr. 378).

On April 20, 2012, the claimant presented to Billie G. Waltz, R.N., and reported pain and numbness in his fifth digits, and increased tremors in his legs (Tr. 399-401). He indicated the tremors reduced the effectiveness of his cane for stability (Tr. 399). On examination, the claimant had equal grip and strength bilaterally to his hands and fingers, but a very unsteady gait (Tr. 399). Ms. Waltz ordered the claimant a walker and counseled him extensively on alcohol abstinence (Tr. 399). Similarly, the claimant reported numbness in his fingertips and ataxia to Dr. Joel S. Cheong on January 16, 2013 (Tr. 385). Dr. Cheong noted the claimant had an ataxic gait and station, poor balance, and normal range of motion in his upper and lower extremities, but his lower extremities were weak and tremulous (Tr. 385).

State reviewing physician Dr. Colleen Ryan reviewed the claimant's records on May 2, 2012, and found he could perform light work with frequent climbing ramps/stairs and stooping, and occasional climbing ladders/ropes/scaffolds, kneeling, crouching, and crawling (Tr. 277-84). Dr. Ryan also found the claimant needed to avoid concentrated exposure to extreme cold and hazards such as machinery, heights, etc. (Tr. 281).

In her written opinion, the ALJ summarized the claimant's hearing testimony as well as most of the medical evidence contained in the record before her (Tr. 26-32). At step two, she appeared to accept as true Dr. Singhal's opinion that the claimant's cerebellar ataxia could possibly be the result of his alcohol abuse, but did not otherwise discuss or weigh his opinion. For her credibility determination, the ALJ discounted the

claimant's credibility due to his: (i) routine and conservative treatment for degenerative disc disease, (ii) failure to report neck problems after being released from care, (iii) failure to report any problems with his hands, (iv) noncompliance with recommended treatment, and (v) sporadic work history (Tr. 30). The ALJ then gave "little weight" to the state reviewing physician's opinion, finding the claimant had greater physical limitations as demonstrated by the evidence submitted after the issuance of such opinion (Tr. 30).

Following the issuance of the ALJ's written opinion, additional evidence was submitted to the Appeals Council. Included in that submission was a Medical Source Statement ("MSS") from Dr. Cheong dated February 13, 2014, wherein he opined that the claimant could lift/carry less than ten pounds frequently and occasionally, stand/walk less than two hours in an eight-hour workday, sit less than six hours in an eight-hour workday, and could not use his hands (Tr. 403-04). As objective findings, Dr. Cheong referred to the claimant's diagnosis of cerebellar ataxia, which he opined would not likely improve (Tr. 404).

The claimant's contention regarding his impairments and their effect on his ability to work is bolstered by the evidence contained in the record but submitted after the ALJ issued her opinion. The Appeals Council was required to consider such additional evidence if it is: (i) new, (ii) material, and (iii) "relate[d] to the period on or before the date of the ALJ's decision." *Chambers v. Barnhart*, 389 F.3d 1139, 1142 (10th Cir. 2004), *quoting Box v. Shalala*, 52 F.3d 168, 171 (8th Cir. 1995). The Appeals Council

*did* consider this evidence (Tr. 6), and the undersigned Magistrate Judge has no difficulty concluding that it does qualify.

Evidence is new if it "is not duplicative or cumulative." *Threet v. Barnhart*, 353 F.3d 1185, 1191 (10th Cir. 2003), *quoting Wilkins v. Sec'y, Dep't of Health & Human Svcs.*, 953 F.2d 93, 96 (4th Cir. 1991). The additional records submitted to the Appeals Council were clearly new evidence. Dr. Cheong's MSS was never presented to the ALJ prior to her decision, nor did he opine as to the claimant's limitations in the treatment records the ALJ did review, thus his MSS is neither duplicative nor cumulative. Second, evidence is material "if there is a reasonable possibility that [it] would have changed the outcome." *Threet*, 353 F.3d at 1191, *quoting Wilkins*, 953 F.2d at 96. The evidence must "reasonably [call] into question the disposition of the case." *Threet*, 353 F.3d at 1191. *See also Lawson v. Chater*, 83 F.3d 432, 1996 WL 195124, at *2 (10th Cir. April 23, 1996) (unpublished table opinion). In this regard, Dr. Cheong's MSS is the only treating physician opinion as to specific limitations in the record, and he indicated the claimant was not capable of performing sedentary work due to his cerebellar ataxia (Tr. 403-04). This evidence suggests the claimant has impairments discounted or completely unaccounted for in his RFC, and it is therefore clearly material.

Finally, the evidence is chronologically relevant if it pertains to the time "period on or before the date of the ALJ's Decision." *Kesner v. Barnhart*, 470 F. Supp. 2d 1315, 1320 (D. Utah 2006), *citing* 20 C.F.R. § 404.970(b). Dr. Cheong supported his opinion by referencing the claimant's cerebellar ataxia diagnosis, which Dr. Singhal first made in

February 2012, thus his MSS is chronologically relevant to the ALJ's decision. Therefore, the evidence presented by the claimant after the ALJ's decision *does* qualify as new and material evidence under 416.1470(b), and the Appeals Council considered it, so the newly-submitted evidence "becomes part of the record . . . in evaluating the Commissioner's denial of benefits under the substantial-evidence standard." *Chambers*, 389 F.3d at 1142, *citing O'Dell v. Shalala*, 44 F.3d 855, 859 (10th Cir. 1994). The ALJ had no opportunity to perform the proper analysis, and while the Appeals Council considered this new evidence, they failed to analyze it in accordance with the appropriate standards. *See Watkins v. Barnhart,* 350 F.3d 1297, 1300-01 (setting forth the framework for analyzing a treating physician's opinion). In light of this new evidence, the Court finds that the decision of the Commissioner is not supported by substantial evidence. On remand, the ALJ should re-assess the claimant's RFC in light of the new evidence, and then re-determine the work he can perform, if any, and ultimately whether he is disabled.

## Conclusion

In summary, the Court FINDS that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The Commissioner's decision is accordingly REVERSED and the case REMANDED for further proceedings consistent herewith.

**DATED** this 28th day of September, 2016.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**